IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **1150 BP LLC** | : | CIVIL ACTION |
| **Plaintiff,** | : | |
| | : | |
| vs. | : | NO.  05-5686 |
| | : | |
| **QWEST CHEMICAL CORPORATION** | : | |
| **Defendant.** | : | |

## O R D E R  &  M E M O R A N D U M

### O R D E R

**AND NOW**, this 12th day of July 2006, upon consideration of the Plaintiff's Motion in Limine to Bar The Expert Testimony of Stephen H. Golden, P.E. (Document No. 17, filed May 12, 2006), and the Defendant's Answer to Motion in Limine to Bar the Expert Testimony of Stephen H. Golden, P.E. (Document No. 18, filed May 30, 2006), for the reasons set forth in the Memorandum, **IT IS ORDERED** that Plaintiff's Motion in Limine to Bar The Expert Testimony of Stephen H. Golden, P.E. (Document No. 17, filed May 12, 2006) is **DENIED**. This Order is **WITHOUT PREJUDICE** to 1150 BP LLC's right to object to any inadmissible testimony or other evidence offered by Golden, including, but not limited to, evidence allegedly barred under the terms of the lease agreement at issue.

### M E M O R A N D U M

**I.     BACKGROUND**

Plaintiff, 1150 BP LLC ("BP"), is a Pennsylvania Limited Liability Company with its principal place of business at 113 Bethlehem Pike, Colmar, Pennsylvania. Comp. ¶ 1. Defendant, Qwest Chemical Corporation ("Qwest"), is organized under the laws of either Delaware or Illinois.[1] On or

---

[1] The parties contest whether the defendant is a Delaware corporation or an Illinois corporation. Compare Compl. ¶ 2 (plaintiff describing defendant as Delaware corporation);  Pl. Ans. to Def. Counterclaim ¶¶ 1, 3 (same), with Notice of Removal ¶¶ 4-5 (defendant describing

about November 18, 2003, pursuant to a written lease agreement, Qwest agreed to lease from BP the premises at 1150 Bethlehem Pike, Hatfield, Pennsylvania. Comp. ¶ 4; Def. Counterclaim ¶ 1. At issue in this case is whether BP and Qwest fulfilled their obligations under the written lease agreement.

Qwest has retained Stephen H. Golden, P.E., a structural engineer, as an expert. Golden wrote a report, dated April 7, 2006, with the following sections: Landlord's Scope of Work[2]; Discussion, which includes subsections entitled Architectural Issues,[3] Structural Issues,[4] Electrical and Plumbing Issues,[5]

---

defendant as Illinois corporation).

[2] Golden explains that, on or about November 18, 2003, Qwest and BP executed the lease with an attachment entitled "Landlord's Scope of Work," in which BP promised to make ceratin modifications, additions, and repairs to the property. Because the attachment was not signed or initialed during the lease execution, Qwest and BP each have copies of that document with minor variations representing their own understanding of the landlord's required work. In this section, Golden reviews the discrepancies between Qwest's document and BP's document. He notes that "[n]early all the failures to meet the Landlord's Scope of Work appear in both [versions of the document]." Golden's Report 1, Def. Ex. E.

[3] According to Golden, the architectural issues include, inter alia, BP's failure: (1) to raise the ceiling height to eighteen feet, (2) to install a parapet wall as directed by Qwest, and (3) construct two loading docks and one drive-in door as directed by Qwest. Golden's Report 4-5, Def. Ex. E.

[4] According to Golden, the structural issues include, inter alia: (1) "obvious structural damage to the wood structure"; (2) problems with the cricket installation to the parapet wall; and (3) BP's failure to install any cricket behind the parapet over the retail showroom and warehouse. Golden's Report 5-6, Def. Ex. E.

[5] According to Golden, the electrical and plumbing issues, include, inter alia, BP's failure: (1) to relocate the transformer to the west side of the premises; (2) to provide electrical service to the roof for the new installation of signage, per the local code; (3) to install the agreed upon electrical outlets; (4) to install telephone service within the office area; (5) to maintain the sewage ejector pumps; (6) to install new ADA compliant restrooms. Golden's Report 6-7, Def. Ex. E.

Site and Landscaping Issues,[6] 1150 Expert Report,[7] and Building Repairs and the Effect on Qwest's Operations[8]; and Conclusions. Golden's Report, Def. Ex. E. In concluding, Golden states:

> It is my professional opinion, with a reasonable degree of engineering certainty that [BP] failed to perform significant portions of their Landlords Scope of Work, and certain portions of that scope were performed poorly or in a substandard manner. . . . [BP's] failure to perform the required work prior to Qwest's occupying the property will seriously, negatively affect Qwest's operations within the structure. Repairing the structurally deficient office roof, alone, will force Qwest to cease or temporarily relocate their operation for several months.

Golden's Report 12, Def. Ex. E.

BP responded to Golden's proposed testimony by filing Plaintiff's Motion in Limine to Bar The Expert Testimony of Stephen H. Golden, P.E. BP argues that, under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), and Federal Rule of Civil Procedure 37, Golden's proposed testimony must be excluded. For the reasons set forth below, plaintiff's Motion is denied.

## II.  GOLDEN'S PROPOSED TESTIMONY IS GENERALLY ADMISSIBLE UNDER DAUBERT AND F.R.E. 702.[9]

### A.  Legal Standard

Federal Rule of Evidence 702 governs the "Testimony by Experts" as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an

---

[6] According to Golden, the site and landscaping issues include, inter alia, BP's failure to landscape the premises as agreed upon. Golden's Report 7, Def. Ex. E.

[7] In this section, Golden criticizes the investigation and conclusions of BP's expert witness. Golden's Report 7-8, Def. Ex. E.

[8] Golden states "[n]early all the building repairs will require Qwest to vacate the property for varying time periods." Golden's Report 8, Def. Ex. E. Golden then details the repairs required to the premises.

[9] This conclusion is without prejudice to BP's right to object to any inadmissible testimony or other evidence offered by Golden, including, but not limited to, evidence allegedly barred under the terms of the lease agreement at issue.

expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"Faced with a proffer of expert scientific testimony . . . the trial judge must determine at the outset, pursuant to Rule 104(a),[10] whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Daubert v. Merrell Dow Pharms., 509 U.S. 579, 592 (1993). It is now well settled that this gatekeeping function extends beyond scientific testimony to testimony based on "technical" and "other specialized" knowledge. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999). Engineering testimony, such as Golden's, should be examined in light of Daubert and Kumho Tire Co., Ltd. See Kumho Tire Co., 526 U.S. at 151 ("Engineering testimony rests upon scientific foundations, the reliability of which will be at issue in some cases.").

This Court must undertake a flexible inquiry to determine: (1) whether Golden is a qualified expert in the area in which he is being offered as an expert; (2) whether Golden's proposed testimony is reliable; and (3) whether Golden's testimony will assist the trier of fact. Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-43 (3d Cir. 1994) (quoting Daubert, 509 U.S. at 595). "These requirements are succinctly referred to as: qualifications, reliability, and fit." Main St. Mortg., Inc. v. Main St. Bancorp., Inc., 158 F. Supp. 2d 510, 512 (E.D. Pa.

---

[10] Federal Rule of Evidence 104(a) provides: "Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b) [pertaining to conditional admissions]. In making its determination it is not bound by the rules of evidence except those with respect to privileges." These matters should be established by a preponderance of proof. See Bourjaily v. United States, 483 U.S. 171, 175-176 (1987).

2001). The party offering the expert, Qwest, must prove each of these requirements by a preponderance of proof. In Re TMI Litig., 193 F.3d 613, 663 (3d Cir. 1999).

**B.     Analysis**

BP argues that Golden is not qualified to testify, his proposed testimony is unreliable, and his testimony is irrelevant. The Court will examine these contentions in turn.

1.     Qualifications

BP argues that Golden does not qualify as an expert because "[t]here is no evidence that he has any real experience in the fields of Architecture, Electrical Engineering, Plumbing, Civil Engineering, Landscaping, Manufacturing and Retail Sales." Pl. Br. at 4. Qwest responds: (i) Golden has over thirty years experience as a professional engineer; (ii) since 1988, he has maintained his own consulting practice; and (iii) he has been accepted as an expert witness by the U.S. District Court of the Eastern District of Pennsylvania, and Pennsylvania and New Jersey state courts. See Golden's Curriculum Vitae, Def. Ex. D. Qwest further argues that Golden is experienced in precisely the type of inspection and analysis that he performed in this case. Specifically, Qwest points to the fact that Golden's experience includes: structural engineering for buildings and facilities from single family dwellings to multistory, multifamily residential, commercial, and industrial buildings; designing repairs and modifications to commercial and industrial buildings; performing structural plan reviews for a township; monitoring and observing construction for owners and municipalities; and conducting inspections on buildings for owners, buyers, lenders, insurers, and attorneys for "due diligence," building code conformity and structural damage. Def. Mem. 6; Golden's Curriculum Vitae, Def. Ex. D.

On the present state of the record, the Court concludes that Qwest has established by a preponderance of the proof that Golden is qualified to testify in this case.

2.      Reliability

BP questions the reliability of Golden's report, arguing that most of Golden's "conclusions" are either "mere restatement[s] of defendant's factual allegations" or "pure speculation, rather than conclusions based on scientific analysis." Pl. Br. 4. In support of this allegation, BP offers no evidence. Qwest responds that Golden's report is based on his review of the relevant documents, his own observations, and multiple inspections of the physical premises. Def. Mem. 3, 5.

On the present state of the record, the Court concludes that Qwest has established by a preponderance of the proof that Golden's proposed testimony is reliable. To contest Golden's conclusions, BP will have an opportunity to cross-examine Golden, offer rebuttal testimony, and raise objections to inadmissible questions or evidence.

3.      Fit or Relevance

BP contends that the written lease required Qwest to accept the building in "as is" condition, which makes Golden's proposed testimony irrelevant. Pl. Br. at 4. In response, Qwest argues that BP failed to fulfill its obligations under Section 10 of the lease, which required BP to "substantially complete the construction of the improvements and work to the Premises as is set forth on the List of Lessor's Improvements and General Construction Requirements." Lease Agreement, Def. Ex. A, at 10; see also Def. Mem. 2. Qwest further contends that Golden's proposed testimony is relevant because it identifies the deficiencies in BP's work. Def. Mem. 6.

The Court agrees with Qwest on this issue. Central issues in this case are, inter alia, what obligations, if any, BP had under the lease agreement and the documents referred to as the "Landlord's Scope of Work" and the "Punch List," and whether BP satisfied those obligations. The Court concludes that, on the present state of the record, Qwest has established by a preponderance of the proof that Golden's proposed testimony will assist a trier of fact in determining those issues. Thus, there is no basis for BP's claim that Golden's proposed testimony is irrelevant.

Because Qwest has met its burden of establishing that Golden is qualified, and his proposed testimony is reliable and relevant, the Court will admit Golden's proposed testimony under Daubert, subject to BP's right to object to any inadmissible testimony or other evidence offered by Golden, including, but not limited to, evidence allegedly barred under the terms of the lease agreement at issue.

### III.  GOLDEN'S PROPOSED TESTIMONY IS GENERALLY ADMISSIBLE UNDER FEDERAL RULE OF CIVIL PROCEDURE 37.[11]

BP's final argument is that Golden's proposed testimony should be excluded under Federal Rule of Civil Procedure 37, which governs the "Failure to Make or Cooperate in Discovery; Sanctions." BP alleges that Qwest failed:

> to provide plaintiff [BP] with the engineering drawings and information which were reviewed by Mr. Golden, and formed the basis of his report. This information was requested by Plaintiff in a timely manner, and the lack of this information has prejudice [sic] Plaintiff's ability to respond to Mr. Golden's testimony at trial.

Pl. Br. 4-5. In support of this allegation, BP offers no evidence.

---

[11] This conclusion is without prejudice to BP's right to object to any inadmissible testimony or other evidence offered by Golden, including, but not limited to, evidence allegedly barred under the terms of the lease agreement at issue.

Qwest responded to this allegation as follows:

> Qwest has made available to plaintiff every document relied upon by Mr. Golden. The plans and drawings referred to in Mr. Golden's report were made available for inspection pursuant to the Federal Rules of Civil Procedure. In fact, the depositions of [two key witnesses] were conducted at the offices of Qwest, rather than at counsel's office, because plaintiff wanted the opportunity to review the original plans and drawings in Qwest's possession. Mr. Golden reviewed the same plans and drawings, as well as those on file with the Township of Hatfield. Qwest is fully in compliance with its discovery obligations and there is no basis for preclusion under Rule 37.

Def. Mem. 7.

Thereafter, BP did not contest Qwest's version of events by seeking leave to file a Reply Brief or any other submission with the Court. Accordingly, on the present state of the record, the Court concludes that Federal Rule of Civil Procedure 37 does not require the exclusion of Golden's proposed testimony. This ruling is without prejudice to BP's right to object to any inadmissible testimony or other evidence offered by Golden.

## IV.     CONCLUSION

For the foregoing reasons, the Court concludes that the proposed testimony of Stephen H. Golden is admissible under <u>Daubert</u> and Federal Rule of Evidence 37. The Plaintiff's Motion in Limine to Bar The Expert Testimony of Stephen H. Golden, P.E. is denied.  This ruling is without prejudice to BP's right to object to any inadmissible testimony or other evidence offered by Golden, including, but not limited to, evidence allegedly barred under the terms of the lease agreement at issue.

**BY THE COURT:**

　　　　　　　　　　　　　　　　　　　　　　**/s/ Honorable Jan E. DuBois**
　　　　　　　　　　　　　　　　　　　　　　**JAN E. DUBOIS, J.**